# In the United States Court of Federal Claims

No. 17-123
Filed: May 18, 2017*

*****************************************

VINTAGE AUTOWORKS, INC.,

    Plaintiff,

v.

THE UNITED STATES,

    Defendant.

*****************************************

Administrative Procedures Act ("APA"),
  5 U.S.C. § 706;
Bid Protest Jurisdiction, 28 U.S.C. § 1491;
Bid Protest Regulation, 4 C.F.R. § 21.2;
Contract Planning, Solicitation,
  Evaluation, And Award Procedures,
  10 U.S.C. § 2305;
Federal Acquisition Regulation ("FAR"),
  48 C.F.R. §§ 9.103, 9.104-1, 9.104-3,
  15.305, 52.236-7;
Rules of the United States Court of
  Federal Claims ("RCFC") 52.1;
Task And Delivery Order Contracts—
  General Authority, 41 U.S.C. § 4103.

**Cynthia S. Malyszek**, Malyszek & Malyszek, Westlake Village, California, Counsel for Plaintiff.

**Antonia Ramos Soares**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

## MEMORANDUM OPINION AND ORDER RESOLVING CROSS-MOTIONS FOR JUDGMENT ON THE ADMINSTRATIVE RECORD

## I.    FACTUAL BACKGROUND.[1]

    On August 15, 2016, the United States Marshals Service ("USMS") issued Solicitation Number DJM-16-A44-Q-0025 (the "Solicitation"), to request for the Middle District of Florida bid proposals for towing, storage, maintenance, and disposal services for seized and forfeited vehicles. AR Tab 14, at 34. The Solicitation requested offers for a firm fixed price, indefinite-delivery indefinite-quantity ("IDIQ") contract, for an initial service period of one year and with options for an additional four years. AR Tab 14, at 37.

---

    *On May 12, 2017, the court forwarded a sealed copy of this Memorandum Opinion And Order to the parties to redact any confidential and/or privileged information from the public version and note any citation or editorial errors that required correction. The parties had until May 17, 2017, to file any proposed redactions or revisions. Neither party proposed any redactions or revisions.

    [1] The facts discussed herein were derived from the February 6, 2017 Administrative Record ("AR Tabs 1–62," at 1–583).

Award of any contract was contingent on a "responsible offeror" submitting an offer that conformed in all aspects to the requirements specified in the Solicitation and also determined to be the "most advantageous to the Government, price and other factors considered." AR Tab 14, at 57. The following factors were to be considered by the USMS, *i.e.*, "Technical Capability," "Past Performance," and "Price." AR Tab 14, at 57. The technical capability and past performance factors, however, "when combined" were to be approximately of equal weight to the price factor. AR Tab 14, at 57.

The Solicitation included attached "Instructions To Offerors," requiring written proposals be submitted to the Contracting Officer (the "CO") by September 7, 2016. AR Tab 14, at 65. The Instructions specified that an offeror's written proposal should include: past performance information; a price quote; and a description of the offeror's technical capabilities, including information about the offeror's vehicle towing, storage, and disposal capabilities. AR Tab 14, at 65–67.

The Solicitation also included an attached "Statement Of Work," that described the conditions of contract performance. AR Tab 14, at 74. The Statement of Work provided that offerors could expect to store several categories of vehicles, including: "Category 4: Salvage/Scrap. Vehicles valued at $0 to $1,000 are to be stored outdoors, without maintenance." AR Tab 14, at 75. The Statement of Work also stated that "[t]he contractor shall provide evidence that it has complied with all laws and ordinances associated with vehicle storage." AR Tab 14, at 79. In addition, the Statement of Work provided that, if the CO's Representative determined that vehicles were to be disposed of via sale, "[t]he contractor shall conduct all sales in accordance with all applicable Federal, State, and Local laws, regulations, and ordinances." AR Tab 14, at 83.

On September 7, 2016, the USMS received timely written proposals from four offerors, including Flynn Jensen Company, LLC ("Flynn Jensen"), and Vintage Autoworks, Inc. ("Vintage"). AR Tab 20, at 127–58 (Flynn Jensen); AR Tab 21, at 159–94 (Vintage). Flynn Jensen's proposal stated that it would store vehicles with a subcontractor, Orlando Auto Auction, LLC ("Orlando Auto"), located at 4636 West Colonial Drive in Orlando, Florida. AR Tab 20, at 140. The written proposals were reviewed by the USMS's Technical Evaluation Board (the "TEB"). On September 26, 2016, the TEB issued reports granting both Flynn Jensen and Vintage an overall rating of "Satisfactory" for technical capability. AR Tab 26, at 301.

On September 26, 2016, the CO issued a Past Performance Evaluation, and assigned to Flynn Jensen an overall past performance rating of "Very Good." AR Tab 27, at 303. Vintage received an overall past performance rating of "Satisfactory." AR Tab 27, at 304.

On October 18, 2016, the CO issued a Determination Of Price Reasonableness, comparing Flynn Jensen's total price of $1,314,603.25 with Vintage's total price of $1,307,732.50. AR Tab 28, at 305. The CO found that, "[a]ltough Flynn Jensen's price is slightly higher than Vintage Autoworks, it is . . . within the range of other offers received therefore making the price submitted by Flynn Jensen Company fair and reasonable." AR Tab 28, at 305.

On that same day, the CO issued a Determination Of Contractor Responsibility, finding that Flynn Jensen was a "responsible offeror," pursuant to section 9.104-1 of the Federal Acquisition Regulation ("FAR").[2]  AR Tab 29, at 306.

On October 27, 2016, the CO determined that Flynn Jensen's offer provided the "best overall value" for the USMS, based on technical capability, past performance, and price, and awarded the contract to Flynn Jensen.  AR Tab 31, at 314.  Although Flynn Jensen offered a slightly higher price, Flynn Jensen possessed "a slight technical advantage [and] a significant past

---

[2] FAR 9.104-1 provides that:

To be determined responsible, a prospective contractor must—

(a) Have adequate financial resources to perform the contract, or the ability to obtain them (see 9.104-3(a));

(b) Be able to comply with the required or proposed delivery or performance schedule, taking into consideration all existing commercial and governmental business commitments;

(c) Have a satisfactory performance record (see 48 CFR 9.104-3(b) and part 42, subpart 42.15). A prospective contractor shall not be determined responsible or nonresponsible solely on the basis of a lack of relevant performance history, except as provided in 9.104-2;

(d) Have a satisfactory record of integrity and business ethics (for example, see Subpart 42.15).

(e) Have the necessary organization, experience, accounting and operational controls, and technical skills, or the ability to obtain them (including, as appropriate, such elements as production control procedures, property control systems, quality assurance measures, and safety programs applicable to materials to be produced or services to be performed by the prospective contractor and subcontractors) (see 9.104-3(a));

(f) Have the necessary production, construction, and technical equipment and facilities, or the ability to obtain them (see 9.104-3(a)); and

(g) Be otherwise qualified and eligible to receive an award under applicable laws and regulations (see also inverted domestic corporation prohibition at 9.108).

48 C.F.R. § 9.104-1.

performance advantage" over Vintage, and those "non-price advantages" warranted paying Flynn Jensen's "slight premium price." [3]  AR Tab 31, at 314.

Accordingly, the USMS notified Vintage that it awarded the contract to Flynn Jensen.  AR Tab 32, at 315.

## II.   PROCEDURAL HISTORY.

On November 3, 2016, Vintage filed a protest with the USMS, arguing that Flynn Jensen's subcontractor's Orange County, Florida facility was not in compliance with the requirements of the Statement of Work, because it was not zoned for the "storage of vehicles" or to "hold live auctions." AR Tab 39, at 378.  On November 9, 2016, the USMS denied Vintage's protest, finding that a "throughout investigation with the Zoning Division of Orange County, Florida, has provided information that supports Flynn [Jensen] Company's compliance with the Statement of [W]ork." AR Tab 43, at 388.

On November 21, 2016, Vintage submitted an e-mail to the Government Accountability Office ("GAO"), but did not provide a written protest letter to the agency until 6:06 PM Eastern Standard Time ("EST") that day.  AR Tab 60, at 579.  The GAO therefore docketed Vintage's protest on the following day, November 22, 2016.  AR Tab 60, at 579.

On January 12, 2017, the GAO dismissed Vintage's protest, because it was not filed within ten days of notice that the agency-level protest was denied on November 9, 2016.  AR Tab 60, at 579; see also 4 C.F.R. § 21.2(a)(3) ("If a timely agency-level protest was previously filed, any subsequent protest to GAO filed within 10 days of actual or constructive knowledge of initial adverse agency action will be considered[.]").

On January 27, 2017, Vintage filed a Complaint ("Compl.") in the United States Court of Federal Claims.  ECF No. 1.  Count I alleges that the USMS improperly awarded the contract to an offeror that was not "responsible;" Count II alleges that the CO ignored the Solicitation's requirements when she awarded the contract to Flynn Jensen; Count III alleges that the CO and the USMS conducted an improper technical evaluation in finding Flynn Jensen was "responsible;" and Count IV alleges that the CO and the USMS neglected to properly evaluate Flynn Jensen's past-performance history.  Compl. ¶¶ 28–52.

On that same day, the court convened a telephone status conference.  On January 31, 2017, the Government filed a Status Report, explaining that the Government would not agree to a voluntary stay of the contract, because Flynn Jensen had commenced performance under the October 27, 2016 contract.  ECF No. 7.  On that same day, the court entered a Protective Order. ECF No. 6.

On February 1, 2017, the court entered a Scheduling Order.  ECF No. 8.  On February 6, 2017, the Government filed the Administrative Record.  ECF No. 9.  On February 24, 2017, Vintage filed a Motion For Judgment On The Administrative Record ("Pl. Mot."), pursuant to Rule

---

[3] Flynn Jensen's offered price was approximately 0.52 percent higher than Vintage's.  AR Tab 31, at 314.

of the United States Court of Federal Claims ("RCFC") 52.1.  ECF No. 12.  On March 9, 2017, the Government filed a Response And Cross-Motion For Judgment On The Administrative Record ("Gov't Mot.").  ECF No. 13.  On March 16, 2016, Vintage filed a Response ("Pl. Resp.").  ECF No. 15.  On March 23, 2017, the Government filed a Reply ("Gov't Reply").  ECF No. 16.

## III.    DISCUSSION.

### A.    Jurisdiction.

Under the Administrative Dispute Resolution Act of 1995 ("ADRA"), the United States Court of Federal Claims has jurisdiction:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation *in connection with a procurement or a proposed procurement.*

28 U.S.C. § 1491(b)(1) (emphasis added).

The January 27, 2017 Complaint alleges that the USMS violated FAR 9.104-1 and 9.104-3 when it evaluated Flynn Jensen's offer.[4]  Compl. ¶¶ 28–52.  The Complaint also alleges

---

[4] FAR 9.104-3, under the heading "Application Of Standards," provides:

> (a) Ability to obtain resources.  Except to the extent that a prospective contractor has sufficient resources or proposes to perform the contract by subcontracting, the contracting officer shall require acceptable evidence of the prospective contractor's ability to obtain required resources (see 9.104-1(a), (e), and (f)).  Acceptable evidence normally consists of a commitment or explicit arrangement, that will be in existence at the time of contract award, to rent, purchase, or otherwise acquire the needed facilities, equipment, other resources, or personnel.  Consideration of a prime contractor's compliance with limitations on subcontracting shall take into account the time period covered by the contract base period or quantities plus option periods or quantities, if such options are considered when evaluating offers for award.

> (b) Satisfactory performance record.  A prospective contractor that is or recently has been seriously deficient in contract performance shall be presumed to be nonresponsible, unless the contracting officer determines that the circumstances were properly beyond the contractor's control, or that the contractor has taken appropriate corrective action.  Past failure to apply sufficient tenacity and perseverance to perform acceptably is strong evidence of nonresponsibility.  Failure to meet the quality requirements of the contract is a significant factor to consider in determining satisfactory performance.  The contracting officer shall consider the number of contracts involved and the extent of deficient performance in each contract when making this determination.  If the pending contract requires a subcontracting plan pursuant to Subpart 19.7, The Small Business Subcontracting

that the CO knowingly ignored the requirements of the Statement of Work attached to the Solicitation, as well as the requirements of FAR 52.236-7.[5]  Compl. ¶¶ 37–40.

For these reasons, the court has determined that it has jurisdiction to adjudicate the claims alleged in the January 27, 2017 Complaint.

## B.    Standing.

As a threshold matter, a plaintiff in a bid protest must establish standing by demonstrating that it is an "interested party," pursuant to 28 U.S.C. § 1491(b)(1).  *See Myers Investigative & Sec. Servs. v. United States*, 275 F.3d 1366, 1370 (Fed. Cir. 2002) ("[S]tanding is a threshold jurisdictional issue.").  An "interested party'" is any actual or prospective offeror whose "direct economic interest would be affected by the award of the contract or by a failure to award the

---

Program, the contracting officer shall also consider the prospective contractor's compliance with subcontracting plans under recent contracts.

(c) Affiliated concerns.  Affiliated concerns (see Concern in 19.001 and Affiliates in 19.101) are normally considered separate entities in determining whether the concern that is to perform the contract meets the applicable standards for responsibility.  However, the contracting officer shall consider the affiliate's past performance and integrity when they may adversely affect the prospective contractor's responsibility.

(d)(1) Small business concerns.  Upon making a determination of nonresponsibility with regard to a small business concern, the contracting officer shall refer the matter to the Small Business Administration, which will decide whether to issue a Certificate of Competency (see subpart 19.6).

(2) A small business that is unable to comply with the limitations on subcontracting at 52.219-14 may be considered nonresponsible.

48 C.F.R. § 9.104-3.

[5] FAR 52.236-7 provides:

The Contractor shall, without additional expense to the Government, be responsible for obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work.  The Contractor shall also be responsible for all damages to persons or property that occur as a result of the Contractor's fault or negligence. The Contractor shall also be responsible for all materials delivered and work performed until completion and acceptance of the entire work, except for any completed unit of work which may have been accepted under the contract.

48 C.F.R. § 52.236-7.

contract." *American Fed'n Of Gov't Emps., AFL-CIO v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001). A protestor has a "direct economic interest" if, after a successful protest, "the government would be obligated to rebid the contract, and [the protestor] could compete for the contract once again." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1334 (Fed. Cir. 2001).

In this case, Vintage submitted a timely offer in response to the Solicitation. AR Tab 21, at 159–94. Consequently, Vintage was an "actual . . . offeror." *American Fed'n*, 258 F.3d at 1302. In addition, the January 27, 2017 Complaint alleges that the USMS's award decision violated the terms of the Solicitation and the FAR. Compl. ¶¶ 28–52. If established, these allegations would render the USMS's decision to award the contract to Flynn Jensen as unlawful and an abuse of discretion, and "the government would be obligated to rebid the contract." *See Impresa*, 238 F.3d at 1334.

In addition to alleging that the plaintiff is an interested party, the complaint in a bid protest must also allege facts sufficient to show that the plaintiff is prejudiced by the award to another bidder. *See Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) ("In order to establish standing, [the plaintiff] must show that it is . . . an interested party, prejudiced by the award to [another bidder.]"). To establish prejudice, the complaint must allege that a "significant error" was made during the procurement process, and "there was a substantial chance it would have received the contract award[,] but for that error." *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (internal citations and quotation marks omitted). But, the United States Court of Appeals for the Federal Circuit has instructed that the test for prejudice "is more lenient than showing actual causation," because the plaintiff need not "show[] that but for the errors [it] would have *won* the contract." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1358 (Fed. Cir. 2005) (emphasis added). Instead, the complaint must allege that the plaintiff has a "greater than insubstantial chance of securing the contract[,] if successful on the merits of the bid protest," *i.e.*, a "substantial chance" of receiving award. *See Info. Tech.*, 316 F.3d at 1319.

In this case, Vintage had a "substantial chance" of being awarded the contract. Under the terms of the Solicitation, a contract could be awarded to a "responsible offeror," that submitted an offer that was the "most advantageous to the Government" based on technical capability, past performance, and price. AR Tab 14, at 57. Vintage was rated "Satisfactory" as to technical capability and past performance, and offered the lowest total price. AR Tab 30, at 307. Flynn Jensen was selected for award, because of achieving a superior past performance rating of "Very Good," but would have been eliminated from competition if, as Vintage alleges, it was not a "responsible offeror." Compl. ¶¶ 28–52 (alleging that the CO's determination that Flynn Jensen was a "responsible offeror" was contrary to the Solicitation and FAR). Accordingly, if Flynn Jensen was eliminated from the competitive range, Vintage would have a "substantial chance" of being awarded the contract at issue.

For these reasons, the court has determined that Vintage has standing to request an adjudication of the claims alleged in the January 27, 2017 Complaint.

C.      **Standard of Review.**

    1.      **Standard Of Review For Judgment On The Administrative Record, Pursuant To RCFC 52.1.**

        In this case, the parties filed Cross-Motions For Judgment On The Administrative Record, pursuant to RCFC 52.1.  The court should treat a judgment on the administrative record as an expedited trial on the record.  *See Bannum*, 404 F.3d at 1356.  Therefore, the existence of material issues of fact does not prohibit the court from granting a RCFC 52.1 motion.  *Id*. at 1354.  Instead, the court can make "factual findings from the record evidence."  *Id*.

    2.      **Standard Of Review For A Bid Protest.**

        In the Tucker Act, as amended by the Administrative Dispute Resolution Act, Pub. L. No. 104-320 § 12, 110 Stat. 3870, 3874 (Oct. 19, 1996), Congress authorized the United States Court of Federal Claims to adjudicate bid protests under the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  *See* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.");  *see also* 5 U.S.C. § 706(2)(A) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]");  *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004) ("Among the various APA standards of review in section 706, the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A): a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (citations omitted)).

        As the United States Court of Appeals for the Federal Circuit has held, the court's primary responsibility in a bid protest is to determine whether a federal agency violated a federal statute or regulation in the procurement process and whether any such violation was prejudicial.  *See Axiom Res. Mgmt. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (holding that "the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations" (internal quotation marks and citations omitted)).

        If no prejudicial violation of law or regulation is found, the court next is required to determine whether the agency decision evidences a rational basis.  *See Savantage Fin. Servs. Inc. v. United States*, 595 F.3d. 1282, 1286 (Fed. Cir. 2010) (holding that a court "must sustain an agency action unless the action does not evidence rational reasoning and consideration of relevant factors" (quotations omitted));  *see also Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415 (1971) (holding that the court must follow a "presumption of regularity" and uphold the agency's action "as long as a rational basis is articulated and relevant factors are considered").

        Finally, the court is required to ascertain whether the federal agency otherwise acted in an arbitrary and capricious manner with respect to the procurement at issue.  *See Banknote Corp.*, 365 F.3d at 1350 ("[A] reviewing court shall set aside the agency action if it is 'arbitrary, capricious, [or] an abuse of discretion.'").  The United States Supreme Court has held that a federal agency's decision is "arbitrary and capricious," when an agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference

in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

### D.    The Parties' Cross-Motions For Judgment On The Administrative Record.

#### 1.    Plaintiff's Motion For Judgment On The Administrative Record.

Vintage argues that the CO's determination that Flynn Jensen was a "responsible offeror" was an abuse of discretion, arbitrary, capricious, and contrary to law. Pl. Mot. at 10. The Statement of Work required that "[t]he contractor shall provide evidence that it has complied with all laws and ordinances associated with vehicle storage. Applicable permits shall be kept current throughout the terms of the contract." AR Tab 14, at 79–80. In addition, FAR 52.236-7 provides that "[t]he Contractor shall, without additional expense to the Government, be responsible for obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws[.]" 48 C.F.R. § 52.236-7.

But, Flynn Jensen did not provide the CO with any evidence that the subcontractor's facility, located at 4636 West Colonial Drive in Orlando, Florida, was in compliance with Florida state law and local ordinances regarding vehicle storage. Pl. Mot. at 5, 8–10. Therefore, the CO did not properly consider the location of Flynn Jensen's subcontractor's facility. Pl. Mot. at 7–8. The CO could not have reasonably determined Flynn Jensen to be a "responsible offeror" without this information. Pl. Mot. at 10–11. Moreover, the CO should have known of the importance of this information, because the CO "has been involved in the . . . use of facilities and zoning issues of this same type in several states." Pl. Mot. at 9.

In addition, the CO's responsibility determination was arbitrary, capricious, and an abuse of discretion, because Flynn Jensen was not technically capable of performing the contract. Pl. Mot. at 12–13. The Statement of Work required that the contractor store "Salvage/Scrap" vehicles outdoors, *i.e.*, vehicles valued between $0 and $1000 "without maintenance." AR Tab 14, at 75. Flynn Jensen's subcontractor could not have stored non-operable "Salvage/Scrap" vehicles outdoors since the storage location was not zoned as a "junk yard." Pl. Mot. at 5.

#### 2.    The Government's Response And Cross-Motion For Judgment On The Administrative Record.

In the March 9, 2017 Cross-Motion For Judgment On The Administrative Record, the Government argues that the CO's decision to award the contract to Flynn Jensen was supported by the administrative record, because the Solicitation did not require offerors to submit permit or license information as part of their proposals. Gov't Mot. at 10–11. In addition, an agency is required to evaluate proposals using only stated evaluation criteria, so it would have been a violation of the law for the CO to deem Flynn Jensen as not "responsible," based on unstated criteria regarding licenses and permits. Gov't Mot. at 11 (citing *NEQ, LLC v. United States*, 88 Fed. Cl. 38, 47 (2009) ("[T]he Competition in Contracting Act . . . indicates that an agency shall evaluate competitive proposals and assess their qualities based solely on the factors and subfactors specified in the solicitation.")).

Although Vintage cites language in the Statement of Work requiring that "[t]he contractor shall provide evidence that it has complied with all laws and ordinances associated with vehicle

storage," nothing therein supports the argument that this was a pre-award requirement. Gov't Mot. at 12 (quoting AR Tab 14, at 79). Instead, the Statement of Work set forth requirements that governed contract performance, after an award of the contract was made. Gov't Mot. at 12. This is confirmed by the Statement of Work, that provides:

> The contractor, including the contractor's facility, shall be fully equipped and ready to begin performance *within 30 days of the award date*. Upon approval by the [CO's Representative], the contractor has 15 calendar days to tow all vehicles . . . to the proposed storage facility.

AR Tab 14, at 76 (emphasis added).

Therefore, whether Flynn Jensen obtained the required permits is a matter of "contract administration," that exceeds the United States Court of Federal Claims' bid protest jurisdiction. Gov't Mot at 12; *see also Control Data Sys. v. United States*, 32 Fed. Cl. 520, 524 (1994) ("Once a contract has been awarded, the administration of the existing contract is within the discretion of the agency and disputes are resolved . . . under the contract disputes clause and the Contract Disputes Act."). In addition, to the extent that Vintage argues that the CO should have known about the importance of permits based upon prior solicitations, those procurements are not part of the administrative record in this case. Gov't Mot. at 13.

The Government adds that COs are afforded "wide discretion" to make responsibility determinations. Gov't Mot. at 15 (quoting *Impresa*, 238 F.3d at 1334–35). In addition, the "contracting officer is the arbiter of what, and how much, information he needs." Gov't Mot. at 16 (quoting *John C. Grimberg Co. v. United States*, 185 F.3d 1297, 1303 (Fed. Cir. 1999)). And, a CO's responsibility determination is entitled to a "presumption of regularity." Gov't Mot. at 16 (citing *Southern Foods, Inc. v. United States*, 76 Fed. Cl. 769, 782 (2007)).

Therefore, Vintage has not met its burden to identify record evidence showing error in the CO's responsibility determination. Gov't Mot. at 17. Instead, Vintage "does no more than simply disagree" with the USMS CO's finding that Flynn Jensen was a responsible contractor. Gov't Mot. at 18. In addition, Vintage misunderstands the requirements of the Solicitation. Gov't Mot. at 19. None of the seven responsibility requirements,[6] identified in FAR 9.104-1, requires consideration of permits. Gov't Mot. at 19. Although FAR 52.236-7 requires that contractors must obtain necessary permits, this requirement concerns contract performance, and "has nothing to do with a responsibility determination." Gov't Mot at 19–20.

For these reasons, Vintage is not entitled to injunctive relief. Gov't Mot at 22–24.

---

[6] The seven factors are: (a) "adequate financial resources . . . or the ability to obtain them;" (b) compliance with "the required or proposed delivery or performance schedule;" (c) a "satisfactory performance record;" (d) a "satisfactory record of integrity and business ethics;" (e) "necessary organization, experience, accounting and operation controls;" (f) "the necessary production, construction, and technical equipment facilities, or the ability to obtain them;" and (g) being "otherwise qualified and eligible to receive the award." *See* 48 C.F.R § 9.104-1(a)–(g).

### 3.     Plaintiff's Response.

Vintage responds that, although a CO has "broad discretion, it cannot ignore a solicitation requirement," and the Statement of Work provided that the "[t]he contractor shall provide evidence that it has complied with all laws and ordinances associated with vehicle storage." Pl. Resp. at 2–3. (quoting AR Tab 14, at 79). Although neither Vintage nor Flynn Jensen submitted evidence of permits or licenses, "that does not mean that the contracting officer need not evaluate such." Pl. Resp. at 3. The CO should have known about the importance of permits based upon "past similar contracts" and the fact that Flynn Jensen proposed to use a subcontractor's facility should have "trigger[ed] the [CO] to further request verification if not provided." Pl. Resp. at 2–4. Vintage adds that, although some of the Statement of Work requirements applied only to performance, other requirements, including the permit requirement, must be satisfied pre-award. Pl. Resp. at 3.

In addition, the Solicitation's Instructions To Offerors specified that the offerors' proposals should include information about the "Proposed Storage Facility," including a "Signed Memorandum of Understanding or Lease Agreement and address of Facility." Pl. Resp. at 6 (quoting AR Tab 14, at 65). The Instructions To Offerors further specified that offerors were to "[s]tate the address of all locations to be utilized by the contract." Pl. Resp. at 6 (quoting AR Tab 14, at 65). This was a "clear indication" that facility location was a material part of the contract, and it was unreasonable for the CO to not "follow through" and inquire about the permits and zoning related to Flynn Jensen subcontractor's facility. Pl. Resp. at 6–7.

### 4.     The Government's Reply.

The Government replies that the proposal and evaluation requirements were set forth in the Solicitation's Evaluation Factors For Award and the Instructions To Offerors, not in the Statement of Work. Gov't Reply at 2. "[N]othing in the [S]olicitation required offerors to submit proof of licensing and permits with their technical proposals." Gov't Reply at 2. Instead, the Statement of Work's permit requirement informed the contract awardee of the obligation to provide permit evidence by the start of contract performance. Gov't Reply at 5. Moreover, Vintage fails to explain why some of the Statement of Work's requirements applied only to performance, but others applied only at the offer stage. Gov't Reply at 7.

In addition, even if Vintage could establish USMS erred during the procurement process, Vintage was not prejudiced by the contract award, because establishing prejudice requires the protestor to show "there was a substantial chance it would have received the contract award absent the alleged error." Gov't Reply at 8 (quoting *Banknote Corp.*, 365 F.3d at 1351). In this case, Vintage did not have a substantial chance of receiving award, because its proposal had the same alleged defect as Flynn Jensen's, *i.e.*, it omitted evidence of permits and licensing. Gov't Reply at 8.

### 5.     The Court's Resolution.

Vintage contends that award of the contract to Flynn Jensen was unlawful, because the CO's determination that Flynn Jensen was a "responsible offeror" was contrary to law, in addition to being "unreasonable, arbitrary and capricious, and an abuse of discretion." Pl. Mot. at 10. The

Government, however, argues, that the CO acted within her discretion when she determined Flynn Jensen to be a responsible offeror.  As discussed herein, the court finds Vintage's contentions without merit.

### a.    Submission Of Permits Was Not Required By The Solicitation.

As a threshold matter, offerors were not required to submit Florida licenses and permits as part of their proposals, despite Vintage's argument to the contrary.  The Solicitation included "Instructions To Offerors," and those Instructions provided that proposals should contain the following:

1.)    Signed and Dated SF-1449 and Completed Offeror's Information Page.
2.)    Signed and Dated Standard Form SF-30 (Amendment of Solicitation/Modification of Contract) [If any amendments were issued]
3.)    The Representations and Certifications with all fill-ins completed via www.SAM.gov registration.
4.)    Three (3) Past Performance Data Worksheets (Attachment #6).
5.)    Price Quote.
6.)    Proposed Storage Facility – Signed Memorandum of Understanding or Lease Agreement and address of Facility.
7.)    Technical Capability Materials – one (1)[.]

AR Tab 14, at 65.

Absent from this list is any requirement that offerors provide permits or licenses or provide verification that proposed storage facilities were in compliance with Florida law and local zoning ordinances.  This was conceded by Vintage in the January 27, 2017 Complaint.  Compl. ¶ 44 ("[T]he [S]olicitation did not specifically state that permits and license[s] be included in the proposals[.]").  Of course, neither Flynn Jensen nor Vintage submitted any such permits or licenses.

The Statement of Work did provide that "[t]he contractor shall provide evidence that it has complied with all laws and ordinances associated with vehicle storage.  Applicable permits shall be kept current throughout the term of the contract."  AR Tab 14, at 79.  But, the Statement of Work provided the contract's performance requirements; it did not govern the content of offers. *See* 41 U.S.C. § 4103 (explaining that solicitations for government contracts should include "a statement of work . . . that reasonably describes the nature . . . of the services . . . to be procured under the contract.").  Offerors were instead required to submit written "Technical Capability Materials," to "describe how [the offeror's] current or proposed storage facilities meet the requirements of the [Statement of Work.]"  AR Tab 14, at 66.  This requirement, however, that an offeror "describe" how its facilities meet the requirements of the Statement of Work is not the same as a requirement that the offeror submit permits with the proposal.

As a matter of law, contract award shall be "based solely on the factors specified in the solicitation."  10 U.S.C. § 2305(b)(1); *see also* 48 C.F.R § 15.305(a) ("An agency shall evaluate

competitive proposals and then assess their relative qualities *solely on the factors and subfactors specified in the solicitation*." (emphasis added)).  Consequently, the CO would have acted contrary to law, if she found Flynn Jensen (or Vintage) not to be "responsible" for failing to include permits with their respective proposals.

Next, Vintage argues that, even if the Solicitation's "Instructions To Offerors" did not include a permit requirement, the Solicitation incorporated by reference FAR 52.236-7, and that requires: "[t]he Contractor shall, without additional expense to the Government, be responsible for obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work."  48 C.F.R. § 52.236-7; *see also* AR Tab 14, at 38 (incorporating FAR 52.236-7 into the contract by reference). Under FAR 52.236-7, once a contract exists, Flynn Jensen is responsible for ensuring that the subcontractor's facility complies with Florida and local law, including any necessary permits.  *See Geren v. Tecom, Inc.*, 566 F.3d 1037, 1045 (Fed. Cir. 2009) (holding that FAR 52.236-7 "simply states that the contractor is '*responsible* for obtaining any necessary licenses and permits['] . . . so that the contractor's *failure to perform* is not excused if impeded by the contractor's failure to comply with legal obligations." (emphasis added)).  For these reasons, the court has determined that FAR 52.236-7 is a performance requirement that did not require Flynn Jensen to submit licenses or permits alongside its proposal.

### b.      The CO's Responsibility Determination Was Not Arbitrary And Capricious, Nor Was It Contrary To Law.

In the alternative, Vintage argues that the CO's responsibility determination was arbitrary, capricious, and contrary to law, because the CO neglected to consider that the facility of Flynn Jensen's subcontractor was not zoned for the storage of "Salvage/Scrap" vehicles.  Pl. Mot. at 7–11.

Under FAR 9.103(b), prior to awarding a contract, the CO must "make . . . an affirmative determination of responsibility."   48 C.F.R § 9.103(b).   FAR 9.104-1(a)–(g) cites seven requirements that a "prospective contractor must" meet to "be determined responsible;" *i.e.*, a contractor must (1) "have adequate financial resources to perform the contract;" (2) be able to comply with the performance schedule; (3) must have a satisfactory performance record; (4) have a satisfactory record of integrity and business ethics; (5) have "the necessary organization, experience, accounting and operational controls . . . applicable to materials to be produced or services to be performed;" (6) "have the necessary production, construction, and technical equipment and facilities, or the ability to obtain them;" and (7) "be otherwise qualified and eligible to receive an award."  48 C.F.R. § 9.104-1(a)–(g).  Vintage contends that the CO failed to consider that Flynn Jensen was required to "have the necessary production, construction, and technical equipment and facilities, or the ability to obtain them."  48 C.F.R. § 9.104-1(f).

The United States Court of Appeals for the Federal Circuit has held that "contracting officers are 'generally given wide discretion' in making responsibility determinations and *in determining the amount of information that is required to make a responsibility determination*." *Impresa*, 238 F.3d at 1334–35 (quoting *John C. Grimberg Co.*, 185 F.3d at 1303) (emphasis added).  Responsibility determinations are entitled to a "presumption of regularity."  *Impresa*, 238 F.3d at 1338.  Moreover, "[w]hen such decisions have a rational basis and are supported by the

record, they will be upheld." *Bender Shipbuilding & Repair Co. v. United States*, 297 F.3d 1358, 1362 (Fed. Cir. 2002). "Although [the FAR] does require [the CO] to have, or to obtain, enough information to make a responsibility determination, [the CO] is the arbiter of what, and how much, information [she] needs." *John C. Grimberg Co.*, 185 F.3d at 1303.

In this case, the CO issued a written Responsibility Determination wherein she found that Flynn Jensen complied with all seven factors required by FAR 9.104-1. AR Tab 29, at 306. The FAR did require the CO to instruct offerors to provide "acceptable evidence of [their] ability to obtain required [facilities]," but this evidence normally consists of "a commitment or explicit arrangement" to rent or purchase needed facilities. 48 C.F.R. § 9.104-3(a). Flynn Jensen's offer satisfied this by evidence of a Memorandum of Understanding ("MOU") with the subcontractor Orlando Auto, agreeing to provide storage space at its facility at 4636 West Colonial Drive in Orlando, Florida. AR Tab 20, at 139.[7]

Vintage overlooks the fact that the CO had "wide discretion" to decide the amount and kind of information she required to make her responsibility determination. *See John C. Grimberg Co.*, 185 F.3d at 1303 (holding that COs have wide discretion "in determining the amount of information that is required to make a responsibility determination"). Vintage has not met its burden to demonstrate that the CO's responsibility determination was arbitrary or capricious.

Finally, Vintage attempts to evade the terms of the Solicitation and the FAR by arguing that the CO's "past experiences" should have informed the CO that the location of a storage facility and the relevant zoning laws, could affect a contractor's performance, if the contractor's facility violated those laws. Pl. Mot. at 10. The Administrative Record contains no reference to these alleged "past experiences" nor has Plaintiff proffered *any* evidence, either of the CO's prior experience with a zoning issue or how it might be remotely relevant. Thus, Vintage has failed to meet its burden to show that the CO's responsibility determination was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

In any event, the Solicitation stated that this was to be a "best value" procurement, with an award to be made to a responsible offeror whose proposal was the "most advantageous to the government," based on a combination of technical capability, past performance, and price. The United States Court of Appeals for the Federal Circuit has held that "[p]rocurement officials have substantial discretion to determine which proposal represents the best value for the government." *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996). In this case, Vintage has failed to demonstrate that the CO abused her discretion in awarding the contract to Flynn Jensen, based upon her evaluation of the award factors. Conversely, the Government has demonstrated that the CO's responsibility determination and "best value" award decision are supported by the Administrative Record.

---

[7] The Instructions To Offerors provided that offerors were to provide a "Signed Memorandum of Understanding or Lease Agreement and address of [the Storage] Facility." AR Tab 14, at 65.

**IV.     CONCLUSION.**

For these reasons, Plaintiff's February 24, 2017 Motion For Judgment On The Administrative Record is denied.  The Government's March 9, 2017 Cross-Motion For Judgment On The Administrative Record is granted.  Accordingly, the Clerk of the United States Court of Federal Claims is directed to enter judgment on behalf of the Government.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Chief Judge**